THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**HAPPY STOMPINGBEAR, ADC #651503**  **PLAINTIFF**

v.  Case No. 4:18-cv-00827-KGB-BD

**WENDY KELLEY, SECRETARY OF THE ARKANSAS**
**DIVISION OF CORRECTION,** *et al.*  **DEFENDANTS**

**ORDER**

Plaintiff Happy Stompingbear, also known as Christopher Ward, is presently confined at the Ouachita River Unit of the Arkansas Division of Correction ("ADC"). On November 5, 2018, Mr. Stompingbear initiated this case by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983 (Dkt. No. 2). Mr. Stompingbear filed an amended complaint on April 5, 2019 (Dkt. No. 77), which is the operative complaint in this case. Presently before the Court are three Partial Recommended Dispositions submitted by United States Magistrate Judge Beth Deere (Dkt. Nos. 117, 127, 157), as well as an appeal of Judge Deere's Order of May 19, 2020, denying Mr. Stompingbear's motion for leave to file a second amended complaint (Dkt. No. 147).

For the reasons set forth below, the Court: (1) adopts the September 18, 2019, Partial Recommended Disposition; (2) adopts November 12, 2019, Partial Recommended Dispositions, except that the Court declines to adopt a portion of Judge Deere's underlying reasoning in her November 12, 2019, Partial Recommended Disposition; (3) affirms Judge Deere's June 8, 2020, Order denying Mr. Stompingbear's motion for leave to file a second amended complaint; and (4) adopts in part and rejects in part the July 30, 2020, Partial Recommended Disposition.

**I.**  **The First Partial Recommended Disposition**

In her September 18, 2019, Partial Recommended Disposition, Judge Deere recommends that Mr. Stompingbear's claims against defendants Tony McHan, William Walker, and John Does

1–5 be dismissed without prejudice for failure to comply with Rule 4(m) of the Federal Rules of Civil Procedure (Dkt. No. 117).  Mr. Stompingbear has filed timely objections to this Partial Recommended Disposition (Dkt. No. 120).  After careful consideration of the instant Partial Recommended Disposition, Mr. Stompingbear's objections, and a *de novo* review of the record, the Court finds no reason to alter or reject Judge Deere's recommendation.

The Court writes separately to address briefly Mr. Stompingbear's objections.  In his objections, Mr. Stompingbear claims that he was not notified that he was to identify the Doe defendants (Dkt. No. 120, at 1).  However, in her November 7, 2018, Initial Order for Pro Se Prisoner-Plaintiffs, Judge Deere informed Mr. Stompingbear of his obligation to serve defendants in compliance with Rule 4(m):

> **Provide Addresses for Service.**  All defendants must be served with the complaint and a summons within 90 days of the filing of a complaint.  This includes "John/Jane Doe" defendants.  Any defendant who is not served within 90 days can be dismissed, without prejudice, from the lawsuit.  It is your responsibility to identify and serve defendants, including "Doe" defendants.  Because you are proceeding IFP, the Court will order service of process on the defendants, but you are responsible for providing valid service addresses.  You may send discovery requests, or use other means, to find valid service addresses for defendants.

(Dkt. No. 3, at 2).

Mr. Stompingbear further argues that "just because I do not know and probably can't find out these identities on my own should not give them a free pass, as this will encourge [sic] all guards to obscure thier [sic] identity in order to avoid lawsuits, more than they already do." (Dkt. No. 120, at 1).  The Court notes that, because this dismissal is without prejudice, Mr. Stompingbear may elect to re-file his claims against the Doe defendants should he choose to pursue them in the future.  Accordingly, the Court adopts the September 18, 2019, Partial Recommended Disposition and dismisses without prejudice Mr. Stompingbear's claims against Mr. McHan, Mr. Walker, and Does 1–5 (Dkt. No. 117).

Finally, in his objections, Mr. Stompingbear "renew[s] [his] request for an attorney." (*Id.*) The Court construes this request as a motion to appoint counsel. Although the Court recognizes the difficulties that may be encountered by a *pro se*, non-lawyer plaintiff, "*pro se* litigants have neither a constitutional nor a statutory right to appointed counsel in civil cases." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018) (citing *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006)). "Instead, district courts may appoint counsel in such cases if convinced that an indigent plaintiff has stated a non-frivolous claim, and where 'the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel.'" *Id.* (citation omitted) (quoting *Johnson v. Williams*, 788 F.2d 1319, 1322 (8th Cir. 1986)). "The relevant criteria for determining whether counsel should be appointed include the factual complexity of the issues, the ability of the indigent person to investigate the facts, the existence of conflicting testimony, the ability of the indigent person to present the claims, and the complexity of the legal arguments." *Phillips*, 437 F.3d at 794 (citing *Edgington v. Mo. Dep't of Corr.*, 52 F.3d 777, 780 (8th Cir. 1995)). Here, the factual and legal issues in Mr. Stompingbear's pleadings are not sufficiently complex to justify the appointment of counsel, and Mr. Stompingbear's pleadings indicate his basic ability to state claims. Therefore, the Court denies without prejudice Mr. Stompingbear's motion to appoint counsel.

## II.     The Second Partial Recommended Disposition

In her November 12, 2019, Partial Recommended Disposition, Judge Deere recommends that Mr. Stompingbear's fourth motion for a preliminary injunction be denied (Dkt. No. 127). On November 25, 2019, Mr. Stompingbear filed a reply in support of his fourth motion for preliminary injunction, which the Court construes as an objection to this Partial Recommended Disposition (Dkt. No. 128). The Court has conducted a *de novo* review of the record and concurs with Judge

Deere's ultimate recommendation that Mr. Stompingbear's fourth motion for a preliminary injunction be denied. The Court reaches this same decision, with slight modification to the reasoning set forth by Judge Deere.

The Court writes separately to address the arguments raised in Mr. Stompingbear's reply to his fourth motion for a preliminary injunction. Mr. Stompingbear, a Wiccan, uses tarot cards for religious purposes. ADC policy requires inmates to check out tarot cards from a chaplain and prohibits keeping cards in cells. In the instant motion, Mr. Stompingbear requests an injunction requiring prison officials to allow him "to have[,] use[,] and keep tarot cards 'on person'" (Dkt. No. 125, at 2).

When determining whether to grant a motion for preliminary injunction, this Court considers: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (quoting *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)). "A preliminary injunction is an extraordinary remedy, and the burden of establishing the propriety of an injunction is on the movant." *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) (citations omitted).

Having carefully reviewed the record, the Court disagrees with Judge Deere's finding that Mr. Stompingbear has not sufficiently demonstrated at this stage of the litigation that he will suffer irreparable injury in the absence of a preliminary injunction because prison officials have allowed him to keep a chalice and a religious symbol in his cell. In so finding, Judge Deere reasoned that Mr. Stompingbear failed:

> [T]o present any evidence . . . to show that the chaplain has recently denied his requests to check out tarot cards or that ADC officials have prevented him from

4

keeping other Wiccan items in his cell. To the contrary, Mr. Stompingbear concedes hat he currently has a chalice and a religious symbol in his cell. His self-serving, conclusory assertion that the "ADC does not allow me to practice my religion in anyway," without factual support, cannot support a finding of irreparable harm.

(Dkt. No. 127, at 2–3).

That Mr. Stompingbear is permitted to keep a chalice and a religious symbol in his cell does not preclude a finding that Mr. Stompingbear will suffer irreparable harm if the injunction is not granted. As Mr. Stompingbear explained in the instant motion:

> Tarot cards are how I remain in contact with my Higher Power especially now that I can't do ritual. I feel lost as to my path (R). The longer I am lost the longer and/or harder it will be for me to find my correct path, if even possible. This irreparable injury is on my life path, my soul and even my mental health, as I have became [sic] depressed, and had what I was told, by mental health, a panic attack. I need the tarot cards to see if the path I'm on is still correct as I making [sic] big life decisions now, life changing decisions, that require communication with my Higher Power

(Dkt. No. 125, at 1). In Mr. Stompingbear's reply to his fourth motion for a preliminary injunction, he further explains the importance of tarot cards to members of the Wiccan religion and to him in particular and why a chalice and a religious symbol, by themselves, are insufficient:

> We believe reading Nirvana is a gradual process, a path must be taken, to keep us from our path is to hinder our soul from reaching Nirvana. Think of it as keeping Christians from going to heaven, it is not good.
>
> We also believe in maligment [sic] spirits/entities, that do things to harm us in the material world. And to not be able to do protection spells is to leave us open to this harm.
>
> . . . .
>
> The Chalice I have is but one of several tools needed to conduct a ritual, by itself… like a hammer and no nails, like a pencil with no lead. I keep it in hopes of one day to get the other tools required to conduct ritual.
>
> The religious symbol is only to show others "Hey I'm Pagan," it can be used in magick [sic] and ritual but by itself, a ritual can not be done. The Chalice and the religious symbols together can not be used to complete a ritual.

5

(Dkt. No. 128, at 1) (second alteration in original).

Based on the foregoing, the Court declines to adopt the portion of the November 12, 2019, Partial Recommended Disposition finding that Mr. Stompingbear has not demonstrated sufficiently that he will suffer irreparable injury in the absence of a preliminary injunction because he is allowed to keep a chalice and a religious symbol in his cell.

Nonetheless, the Court ultimately agrees with Judge Deere that Mr. Stompingbear has not shown a likelihood of success on the merits and, as a result, adopts that portion of her November 12, 2019, Partial Recommended Disposition. "In deciding whether to grant a preliminary injunction, 'likelihood of success on the merits is most significant.'" *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 776 (8th Cir. 2012) (quoting *Minnesota Ass'n of Nurse Anesthetists v. Unity Hosp.*, 59 F.3d 80, 83 (8th Cir. 1995)). "Prison inmates retain constitutional rights protected by the First Amendment, including the right to free exercise of religion." *Fegans v. Norris*, 537 F.3d 897, 902 (8th Cir. 2008) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). In 2000, Congress enacted the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1 *et seq.*, "to provide additional protection for institutionalized persons' religious freedom." *Singson v. Norris*, 553 F.3d 660, 662 (8th Cir. 2009) (citing *Fegans*, 537 F.3d at 902). The RLUIPA states, in pertinent part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> > (1) is in furtherance of a compelling governmental interest; and
> >
> > (2) is the least restrictive means of furthering that compelling governmental interest.

6

42 U.S.C.A. § 2000cc-1(a). The RLUIPA requires that Mr. Stompingbear "show, as a threshold matter, that there is a substantial burden on his ability to exercise his religion." *Murphy v. Miss. Dep't of Corr.*, 372 F.3d 979, 988 (8th Cir. 2004) (citing 42 U.S.C.A. § 2000cc-2(b).). To constitute a substantial burden, the governmental policy or actions must:

> [S]ignificantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunity to engage in those activities that are fundamental to a person's religion.

So far, no one has questioned the sincerity of Mr. Stompingbear's religious beliefs. The Arkansas Department of Correction's ("ADC") policy prohibiting in-cell use of tarot cards could place a substantial burden on Mr. Stompingbear's ability to exercise his religion. *See Singson*, 553 at 662.

The next question, then, is whether defendants have demonstrated that the substantial burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest. *See United States v. Anderson*, 854 F.3d 1033, 1035–37 (8th Cir. 2017). The Court finds that they have.

The denial of Mr. Stompingbear's fourth motion for a preliminary injunction is compelled by the Eighth Circuit's decision in *Singson*. In that case, the Eighth Circuit held that the ADC's policy prohibiting in-cell use of tarot cards did not violate the RLUIPA. *See Singson*, 553 F.3d at 662–63. In so holding, the Eighth Circuit cited various prison safety and security concerns associated with "unrestricted prisoner access to tarot cards," including "gambling, trafficking, psychological control, and gang symbols." *Id.* at 662.

To his credit, Mr. Stompingbear acknowledges the Eighth Circuit's decision in *Singson* and attempts to distinguish this case from *Singson*, arguing that: (1) prison chaplains rejected his

7

check-out requests on all but one occasion; and (2) his second set of tarot cards were hand-drawn and, if he turned them over to the prison chaplaincy, they would be considered "donated" and any person at the prison could check them out and use or even destroy them (Dkt. No. 128, ¶¶ 6–7).

In *Singson*, the Court specifically noted that prison chaplains never rejected the plaintiff's check-out requests. *See Singson*, 553 F.3d at 662. Therefore, Mr. Stompingbear's allegation that his check-out requests were repeatedly denied, if true, would be a meaningful distinction between this case and *Singson*. Likewise, Mr. Stompingbear's allegation that he cannot turn over tarot cards to the prison chaplaincy without allowing others to access and potentially damage or destroy them, if true, would cast doubt on whether the challenged policy is the least restrictive means of promoting prison safety while accommodating Mr. Stompingbear's religious beliefs.

Still, Mr. Stompingbear's attempt to distinguish this case from *Singson* is unavailing, at least on the record before the Court at this stage of the proceeding. The Court acknowledges that Mr. Stompingbear attached some evidence to his fourth motion for a preliminary injunction, including a copy of a set of tarot cards and various grievances that he filed against prison officials at the Ouachita River Unit of the ADC. However, Mr. Stompingbear's factual allegations are, by and large, vague and imprecise, and they are not sufficiently substantiated by record evidence. For example, Mr. Stompingbear alleges that, under ADC policy, he cannot turn over tarot cards to the prison chaplaincy without them being considered "donated" and, therefore, freely accessible to the entire prison. This claim is without evidentiary support; Mr. Stompingbear has not pointed to *evidence* in the record establishing that the ADC has such a policy.

In short, this Court is reluctant to interfere with the internal administration of the state prison without detailed and well-supported affidavits or other evidence to buttress the allegations in Mr. Stompingbear's amended complaint and fourth motion for a preliminary injunction. *But*

*see Overton v. Bazzetta*, 539 U.S. 126, 138 (2003) ("[W]hen a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights.") (quoting *Procunier v. Martinez*, 416 U.S. 396, 405–06 (1974)). Although Mr. Stompingbear is not entitled to preliminary injunctive relief at this time, he may re-file the motion after the record has been more fully developed and should submit detailed affidavits with exhibits that furnish a record sufficient to establish that he is likely to succeed on the merits.

Accordingly, except as noted above, the Court adopts the November 12, 2019, Partial Recommended Disposition as this Court's findings of fact and conclusions of law. The Court denies Mr. Stompingbear's fourth motion for a preliminary injunction without prejudice.

### III. Appeal of Judge Deere's Order of May 19, 2020

On May 14, 2020, Mr. Stompingbear filed a motion for leave to file a second amended complaint (Dkt. No. 143) and attached his proposed second amended complaint thereto (Dkt. No. 143-1). On May 19, 2020, Judge Deere denied Mr. Stompingbear's motion for leave to file a second amended complaint, observing that "Mr. Stompingbear has moved to file a 227-page amended complaint to re-instate claims against Defendants who have been dismissed and to add claims against 16 new named Defendants and two new Doe Defendants" and reasoning that "[a]llowing Mr. Stompingbear to add multiple new Defendants, including Doe Defendants, at this late stage of the litigation would cause undue delay and unfair prejudice to the current Defendants." (Dkt. No. 147, at 1–2.) On June 5, 2020, Mr. Stompingbear filed a document entitled, "Response to Magistrate's recommendation to deny amended complaint" and "Motion to amend complaint and supplement complaint" (Dkt. No. 152), which Judge Deere denied on June 8, 2020 (Dkt. No. 153). In that Order, Judge Deere reiterated that "this lawsuit has been pending for more than 18 months" and that defendants "have already filed a dispositive motion on the issue of exhaustion of

administrative remedies" and, on this basis, determined that "allowing Mr. Stompingbear to amend his complaint at this late stage of the litigation would cause undue delay and unfair prejudice to the Defendants." (Dkt. No. 153, at 1.)

The Court construes Mr. Stompingbear's June 5, 2020, filing as an appeal of Judge Deere's May 19, 2020, Order denying him leave to file a second amended complaint, rather than as a motion for reconsideration or a second motion for leave to file a second amended complaint, and the Court will, therefore, rule on the merits of the motion. Because Judge Deere's Order of May 19, 2020, is neither contrary to law nor clearly erroneous, Mr. Stompingbear's appeal is denied and the Order appealed from is affirmed. The Court denies Mr. Stompingbear's motion for leave to file a second amended complaint.

## IV. Third Partial Recommended Disposition

In her July 30, 2020, Partial Recommended Disposition, Judge Deere recommends that the motion for summary judgment on the issue of exhaustion filed by defendants Randy Watson, James Gibson, Marshall Reed, Wendy Kelley, Dexter Payne, Marvin Evans, David White, Steven Williams, Grant Harris, James Lowe, Paul Fulk, Jeffrey Henig, Sean Treas, Joshua Mayfield, Garry Jenkins, Jada Lawrence, Raymond Naylor, Terrie Bannister, Keith Waddle, Justine Minor, Jesse Jackson, Steven Mitchell, Samuel Knight, Pearlie Johnson, Sharon Cantrell, Steven Ricketts, and Brian Cockrell (collectively, "the Summary Judgment Defendants") be granted; that Mr. Stompingbear's claims raised in Grievances TU-14-148, TU-14-293, TU-14-337, TU-14-387, TU-14-393, TU-15-294, TU-531, and TU-15-749 be dismissed, without prejudice, as time-barred; that Mr. Stompingbear be allowed to proceed on his claims against Mr. Fulk raised in Grievance TU-15-801, claims against Mr. Watson, Mr. Henig, and Mr. Treas raised in Grievance VSM-16-3296, and claims against Mr. Harris raised in Grievance VSM17-542; and that all others claims raised

by Mr. Stompingbear be dismissed, without prejudice, for failure to exhaust his administrative remedies (Dkt. No. 157). The Court has conducted a *de novo* review of the record, along with a review of Judge Deere's July 30, 2020, Partial Recommended Disposition and Mr. Stompingbear's objections (Dkt. Nos. 157, 158).

In his objections, Mr. Stompingbear points out that Judge Deere specifically told him not to argue anything but exhaustion of grievances at this stage and in response to defendants' motion for summary judgment on exhaustion; Judge Deere recommends dismissal of some grievances as time-barred reaching an issue other than exhaustion, according to Mr. Stompingbear (Dkt. Nos. 158, at 1; 151). He proceeds to argue to the Court why certain of his claims should not be dismissed as time-barred based on a continuing violation theory, making arguments he understood he should not make in his initial response to the motion for summary judgment.

Mr. Stompingbear is correct that Judge Deere directed that his response to the pending motion for summary judgment on exhaustion address only exhaustion (Dkt. No. 151). For these reasons, the Court declines to adopt Judge Deere's Third Partial Recommended Disposition in part. The Court will not adopt Judge Deere's recommendation to dismiss as time-barred Mr. Stompingbear's grievances TU-14-148, TU-14-293, TU-14-337, TU-14-387, TU-14-393, TU-15-294, TU-15-531, and TU-15-749 (Dkt. No. 157, at 14-15), and the Court will refer back to Judge Deere for consideration first Mr. Stompingbear's arguments raised in his objections with respect to whether claims filed based on these grievances are time-barred (Dkt. No. 158).

Based upon its *de novo* review of the record, the Court concurs with Judge Deere's other recommendations in the Third Partial Recommended Disposition. Therefore, the Court adopts Judge Deere's recommendation that Mr. Stompingbear be allowed to proceed on his claims against defendant Fulk raised in grievance TU-15-801; claims against defendant Henig raised in grievance

11

VU-16-501; claims against defendants Watson, Henig, and Treas raised in grievance VSM-16-3296; and claims raised against defendant Harris raised in grievance VSM-17-542.

The Court dismisses without prejudice the remaining claims against defendants Fulk, Watson, Henig, Treas, and Harris and all claims against defendants Kelley, Reed, Evans, Payne, White, Gibson, Williams, Lowe, Mayfield, Jenkins, Lawrence, Naylor, Banister, Waddle, Minor, Jackson, Mitchell, Knight, Johnson, Cantrell, Ricketts, and Cockrell, based on Mr. Stompingbear's failure to exhaust administrative remedies.

### III. Conclusion

In sum, the Court rules as follows:

1. The Court adopts the September 18, 2019, Partial Recommended Disposition in its entirety as this Court's findings of fact and conclusions of law (Dkt. No. 117).

2. The Court dismisses without prejudice Mr. Stompingbear's claims against Mr. McHan, Mr. Walker, and Does 1–5.

3. The Court denies without prejudice Mr. Stompingbear's request for appointment of counsel.

4. The Court declines to adopt the portion of the November 12, 2019, Partial Recommended Disposition finding that Mr. Stompingbear has not demonstrated sufficiently at this stage of the litigation that he will suffer irreparable injury in the absence of a preliminary injunction because he is permitted to keep a chalice and a religious symbol in his cell. In all other respects, the November 12, 2019, Partial Recommended Disposition is adopted as this Court's findings of fact and conclusions of law (Dkt. No. 127).

5. The Court denies without prejudice Mr. Stompingbear's fourth motion for a preliminary injunction (Dkt. No. 125).

6. The Court affirms Judge Deere's Order of May 19, 2020, denying Mr. Stompingbear's motion for leave to file a second amended complaint. To the extent that Mr. Stompingbear's filing of June 5, 2020, could be construed as a second motion for leave to file a second amended complaint, the motion is denied.

7. The Court adopts in part and rejects in part the July 30, 2020, Partial Recommended Disposition as this Court's findings of fact and conclusions of law (Dkt. No. 157). For the reasons explained in this Order, the Court declines to adopt Judge Deere's

recommendation to dismiss as time-barred Mr. Stompingbear's grievances TU-14-148, TU-14-293, TU-14-337, TU-14-387, TU-14-393, TU-15-294, TU-15-531, and TU-15-749 (Dkt. No. 157, at 14-15), and the Court refers back to Judge Deere for consideration first Mr. Stompingbear's arguments raised in his objections with respect to whether claims filed based on these grievances are time-barred (Dkt. No. 158).

8. The Court adopts the remaining recommendations set forth in the July 30, 2020, Partial Recommended Disposition as this Court's findings of fact and conclusions of law (Dkt. No. 157). Therefore, the Court grants, in part, and denies, in part, defendants' motion for summary judgment on exhaustion (Dkt. No. 148). The Court determines that Mr. Stompingbear is allowed to proceed on his claims against defendant Fulk raised in grievance TU-15-801; claims against defendant Henig raised in grievance VU-16-501; claims against defendants Watson, Henig, and Treas raised in grievance VSM-16-3296; and claims raised against defendant Harris raised in grievance VSM-17-542. To this extent, defendants' motion for summary judgment on exhaustion is denied. The Court grants defendants' motion for summary judgment based on Mr. Stompingbear's failure to exhaust administrative remedies and dismisses without prejudice the remaining claims against defendants Fulk, Watson, Henig, Treas, and Harris and all claims against defendants Kelley, Reed, Evans, Payne, White, Gibson, Williams, Lowe, Mayfield, Jenkins, Lawrence, Naylor, Banister, Waddle, Minor, Jackson, Mitchell, Knight, Johnson, Cantrell, Ricketts, and Cockrell.

It is so ordered this the 2nd day of November, 2020.

_____
Kristine G. Baker
United States District Judge